SCOTT v. CLINE.*

(Circuit Court of Appeals, Eighth Circuit. May 7, 1919.)

No. 5232.

BANKRUPTCY ☞143(10)—PROPERTY PASSING TO TRUSTEE—PROPERTY HELD IN TRUST FOR BANKRUPT.

Trustee of a bankrupt corporation *held* entitled to recover real estate held in the name of a person who, with his family, owned all the stock of the corporation, on the ground that it was held in trust for the company, but not entitled to such person's homestead and other property in which funds of the company were not invested.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied September 1, 1919.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Joseph W. Woodrough, Judge.

Suit in equity by M. E. Cline, trustee in bankruptcy of the Grove Lumber Company, against W. A. Scott. Decree for complainant, and defendant appeals. Modified.

Charles B. Rogers, of Tulsa, Okl. (F. A. Fulghum, of Tulsa, Okl., on the brief), for appellant.

William F. Tucker, of Tulsa, Okl. (Hulette F. Aby, of Tulsa, Okl., on the brief), for appellee.

Before CARLAND and STONE, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. This is a suit in equity brought by Cline, as trustee in bankruptcy against Scott, seeking a decree declaring that Scott holds the legal title to three parcels of real estate in trust, and ordering him to convey the same to the trustee. The trial court found in favor of the trustee, and entered a decree accordingly, which this appeal seeks to review.

Scott was the owner of the Grove Lumber Company. He and his family held all its stock. For some time prior to May, 1917, he had been engaged in purchasing lots, taking the title in his own name, erecting houses thereon out of the proceeds of a mortgage placed on the property, and out of materials furnished by the Grove Lumber Company. Some of the evidence indicates that these houses were built for a specific purpose under contract with parties to furnish them a home. A distinctive feature of the scheme was that the purchaser could pay off the mortgage in monthly installments instead of paying rent. Each property was carried in a separate account on the books of the Grove Lumber Company, and the materials and labor which went into the house were charged against it in this account. The project seems to have worked well enough until the war came on. Then the great increase in the cost of material and labor made it impossible to complete houses that were in process of erection, for the price that had been agreed upon. This involved the Grove Lumber Company heavily in debt.

In January, 1917, the situation was so critical that Scott had a conference with his largest creditor, the Longbell Lumber Company, and at the instance of that company he signed a written contract scheduling all the real property standing in his name, and stating that the same was held in trust for the Grove Lumber Company; also turning over all the accounts receivable of the Grove Lumber Company. As a part of this transaction he agreed that if the creditors would give him until June 1, 1917, he would undertake personally to pay their claims in full. The consideration for the entire agreement was the extension of time upon the debts of his company, so that he could make collections of outstanding accounts and marshal its resources. It was upon this basis that he signed the document. The very next day after the document was signed, a petition in involuntary bankruptcy was filed against the company, its property seized by a receiver, and an adjudication obtained in due course. It is not claimed that any cred-

itor extended a dollar's credit on the faith of his declaration that he held the parcels of land which he scheduled in trust for his company. On the contrary, the evidence plainly shows that all its indebtedness was incurred prior to that time, so there is no estoppel here. Cline was at first appointed receiver, and afterwards trustee in bankruptcy, and has been in possession of the entire property of the Grove Lumber Company.

The trial court dealt with the case in a rather sweeping way. We do not think that can be done. The different parcels here involved each stand upon a separate basis, and in order to do justice in the case the evidence as to each property must be considered. Acting upon that basis, we will take up the separate properties.

1. Lot 6, block 4, of Kirkpatrick Heights addition to the city of Tulsa: This property was purchased by Mr. Scott as a home. In making the purchase he used $250 of Grove Lumber Company money, and $200 in the form of a note which he held against the party from whom he purchased. The balance of the purchase price, $550, consisted of a second mortgage on the property which the purchasers assumed. A mortgage for $3,000 was given on the property, and the erection of a house started. Out of this mortgage the Grove Lumber Company was paid in full the $250, and for all material which it supplied for the house. The note and mortgages were both signed by Mr. Scott and his wife. The house was not completed at the time of the adjudication in bankruptcy. Subsequent to that date Scott paid out $1,600 of his own money for putting a heating plant into the property, wiring it, putting in a plumbing system, and constructing sidewalks adjacent to it. He moved into the house as a home in May, 1917, and has continuously resided there ever since. He has paid the monthly payments due on the mortgage out of his own private funds. These have amounted to something like $1,000. The decree of the trial court takes all this private investment by Scott in property which from the beginning he intended as his home, and turns it over to the trustee in bankruptcy, and thereby not only applies these personal funds to the payment of the debts of the Grove Lumber Company, but likewise deprives Scott of a home. The decree as to this lot is clearly wrong and should be reversed.

2. Lots 5 and 6 in block 5, Orchard's addition: This property was paid for by an automobile, but the automobile business was carried on as a branch of the business of the Grove Lumber Company. The house on this property had been completed some time before Mr. Scott bought it. It was listed, however, upon the books of the Grove Lumber Company as the property of the company, and was constantly so treated by Scott. For that reason the decree should be affirmed as to this property.

3. Lot 1, block 9, East Lynne addition: That was purchased in July, 1916, by a check of the Grove Lumber Company for $225. Mr. Scott testified, however, that the check was charged to him in the accounts of his company, and, as he owned the company, it would not be unnatural that he should draw checks upon the account for a small private investment like this. He was receiving a salary of

$250 a month from his company. The distinctive feature in regard to this East Lynne property is this: There was no building on it at the time it was purchased, and no building was put on it until after the proceedings in bankruptcy had been started, and Mr. Cline had taken possession of all of the lumber company's effects. The building was contracted for in May, 1917, and erected by a man by the name of Tubbs. It was paid for out of a mortgage on the property. Some of the material that went into the building was purchased at the yards of the Grove Lumber Company from Mr. Cline as trustee in bankruptcy, but all such purchases were paid in full. These purchases were small. Most of the material for the building was purchased of other concerns, and was paid for out of the mortgage. Scott testifies that neither the lot nor the building which he erected on it after the appointment of the trustee in bankruptcy were intended as a part of the assets of the company. He sold this property November 30, 1917. It will therefore be impossible for him to perform the decree by conveyance to the trustee. We think the evidence, as a whole, especially the fact that the building was erected after the proceedings in bankruptcy had been instituted, and all the property of the Lumber Company was in Cline's possession, shows that this property never belonged to the Lumber Company, and the decree as to it is erroneous.

The decree of the trial court is modified, being reversed as to Cline's homestead and the East Lynne property, and affirmed as to the other property, without costs to either party.